BDB:MAS:dpo:mmr

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SANBUR AGOLE SHIRE,** | : | NO. 1:CV-17-1984 |
| Petitioner | : | |
| | : | |
| v. | : | (Rambo, J.) |
| | : | |
| **THOMAS R. DECKER, et al.,** | : | |
| Respondents | : | Filed Electronically |

## RESPONSE TO PETITION FOR HABEAS CORPUS

Petitioner, Sanbur Agole Shire, is a citizen and national of Somalia. Shire is an arriving alien and presently detained by Immigration and Customs Enforcement (ICE). The immigration court denied Shire's asylum and withholding of removal applications, and ordered his removal from the United States. Shire remains detained, however, pending his appeal of this removal order to the board of immigration appeals (BIA).

On July 18, 2017, Shire filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 3.),[1] which challenges ICE's constitutional

---

[1] The only appropriate respondent to this petition is the warden of York County Prison, Clair Doll. See 28 U.S.C. § 2243; Rumsfeld v. Padilla, 542 U.S. 426, 434, 442 (2004). Warden Doll should accordingly be substituted as the sole respondent in this matter.

authority to detain him.[2] This Court should deny the habeas petition because Shire's detention is mandatory and satisfies due process, as Congress has provided the federal government with the ability to detain arriving aliens like Shire until their asylum claims are resolved in the immigration courts. Nevertheless, Shire's detention has also been reasonably brief, thus satisfying due process protections under the Constitution.

## I.   Factual Background

On October 27, 2015, Shire arrived at the United States border at the Brownsville, Texas Port of Entry via the pedestrian lane with a Somalian birth certificate bearing his name and no other documentation where he requested asylum. (Ex. 1, Record of Deportable/ Inadmissible Alien, dated 10/27/2015 at 2.) Immigration officials found Shire inadmissible and charged him as removable pursuant to section 212(a)(7)(A)(i)(I) of the INA. (Id.; see also Ex. 2, Notice and Order of

---

[2] Shire filed his petition in the United States District Court for the Western District of Pennsylvania as he was being housed at the Cambria County Prison. On July 21, 2017, Shire filed a change of address (Doc. 7) notifying the court that he was transferred to the York County Prison, in York, Pennsylvania. On October 25, 2017, the court order that Shire's case be transferred to the Middle District of Pennsylvania. (Doc. 15.)

Expedited Removal; Ex. 3, Notice to Appear.)

On January 5, 2016, ICE determined that Shire be detained in ICE custody. (Ex. 4, Review for Release on Parole.) At that time, Shire was informed that ICE would not consider parole because he could not prove to ICE's satisfaction that he is likely to appear for all scheduled proceedings and enforcement appointments. (Id. at 1.)

On May 5, 2016, the immigration judge ordered Shire removed to Somalia and all of his applications for relief were denied. Shire did not reserve his right to appeal. Therefore, the order became a final order. (Ex. 5, Order of the Immigration Judge dated 05/05/2016.) On August 10, 2016, after a custody status review, ICE determined that Shire would not be released because he was considered a flight risk. (Ex. 6, Decision to Continue Detention dated 08/10/2016 at 1.) On November 8, 2016, ICE conducted another custody status review and determined again that Shire would not be released. (Ex. 7, Decision to Continue Detention dated 11/08/2016 at 1.)

On December 13, 2016, in response to Shire's request to reopen and request for stay, the immigration judge ordered Shire's case reopened *sua sponte* and granted a stay of removal. (Ex. 8, Order of Immigration Judge

3

dated 12/13/2016.)

On December 13, 2016, by amended order, the immigration judge ordered Shire removed to Somalia and all of his applications for relief were denied. (Ex. 9, Amended Order of the Immigration Judge dated 12/13/2016.) At that time, Shire reserved his right to appeal. (Id.)

On January 13, 2017, Shire appealed the December 13, 2016 amended decision to the BIA. (Ex. 10, BIA Receipt.) On February 16, 2017, a briefing schedule was issued for Shire's appeal. (Ex. 11, Notice-Briefing Schedule.) On March 1, 2017, Shire was granted an extension to file his brief. (Ex. 12, Notice-Briefing Extension Request dated 03/01/2017.)

On May 1, 2017, the BIA issued a decision and order to return the record to the immigration judge for preparation of a full decision setting out the reasons for the May 5, 2016 decision. (Ex. 13, BIA Decision and Order dated 05/01/2017.)

On June 8, 2017, the immigration judge issued a decision and order setting out the reasons for the May 5, 2016 decision denying Shire's applications and ordering removal to Somalia. (Ex. 14, Decision and Order of Immigration Judge dated 06/08/2017.) On July 26, 2017, the

4

immigration judge issued an order returning the case to the BIA. (Ex. 15, Order of Return/Certification to the Board dated 07/26/2017.) On August 3, 2017, pursuant to Shire's request for an extension for filing briefs, the BIA granted the extension. (Ex. 16, Notice-Briefing Schedule dated 08/03/2017.) Shire's appeal is currently pending.

## II. Statutory Background

When immigration officials consider whether to detain an alien pending removal, they apply slightly different constitutional and statutory rules to different classes of aliens. Shire's petition mistakenly conflates the standard for arriving aliens with the different standard that applies only to aliens who have already lawfully entered the country.

Generally, when an alien arrives at a United States port of entry without a green card, he or she is considered an arriving alien. 8 C.F.R. § 1.2; see 8 U.S.C. § 1101(a)(13). Moreover, "[a]n arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked." Id. Immigration officials are required to inspect arriving aliens before granting admission to the United States. See 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(3). If the alien lacks valid entry documentation, then he or she is inadmissible. Id. § 1182(a)(7)(A)(i)(I).

If the arriving alien also expresses an intent to apply for asylum, the court cannot immediately order his removal. Id. § 1225(b)(1)(A)(i); cf. id. § 1225(c)(1).

In typical asylum request cases, the arriving alien receives an interview with an asylum officer to assess whether the alien has credibly professed a fear of persecution if he or she returns to their home country. Id. § 1225(b)(1)(A)(ii), (B)(i). If the asylum officer concludes that the alien has a credible fear of persecution, then the officer must refer the alien to removal proceedings under 8 U.S.C. § 1229(a), so that an immigration judge can decide the asylum application. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1229a (outlining the procedures for removal proceedings).

While the removal process plays out in immigration court, "the alien <u>shall be detained</u> for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). Throughout this process, the immigration judge "may not" review ICE's custody determination. 8 C.F.R. § 1003.19(h)(2)(i)(B).

### III. Argument

Shire asserts his ICE detention for twenty five months without a bond hearing violates his due process rights. (Doc. 3, Pet.) Shire seeks a

writ of habeas corpus ordering the immigration court to provide an individualized bond hearing. (Id. at 20.) Yet Shire is an "arriving alien" who is lawfully detained by ICE under 8 U.S.C. § 1225(b). Neither 8 U.S.C. § 1225(b)(2)(A) or the Constitution requires that aliens who are detained while seeking admission to the United States, i.e. arriving aliens, be provided with a bond hearing. Because Congress enjoys plenary power to regulate applicants for admission, including the power to require applicants for admission to be detained pending removal, ICE has fully afforded Shire all required due process. The court should deny the habeas petition because Shire is not entitled to a bond hearing.

    a. **The Constitution endows Congress and the executive with broad power to detain applicants for admission pending removal.**

The Supreme Court has "'long recognized [that] the power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" Fiallo v. Bell, 430 U.S. 787, 792 (1977) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 210 (1953) (internal quotations omitted). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that

7

would be unacceptable if applied to citizens." Demore v. Kim, 538 U.S. 510, 521, 526 (2003). One such rule permits ICE to "constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. This is because "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." Id. at 523.

Further, the Supreme Court has long recognized that the political branches' immigration authority is "at its zenith at the international border." United States v. Flores-Montano, 541 U.S. 149, 152–53 (2004). Accordingly, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry . . . ." Leng May Ma v. Barber, 357 U.S. 185, 187-88 (1958).

The Due Process Clause limits the Government's immigration authority, but the degree of process due to an alien varies depending on the alien's circumstances. Landon v. Plasencia, 459 U.S. 21, 34 (1982) ("[t]he constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances."). Given the Government's plenary immigration authority at the border, it is "well established" that

8

aliens seeking admission to the United States have fewer constitutional protections than individuals who have entered the United States. Zadvydas v. Davis, 533 U.S. 678, 693 (2001); see Leng May Ma, 357 U.S. at 188 ("[T]he Court has recognized additional rights and privileges not extended to [aliens] who are merely 'on the threshold of initial entry.'") (quoting Mezei, 345 U.S. at 212) (internal quotations omitted).

Accordingly, Congress may authorize the detention of aliens at the border, even for prolonged periods, without depriving aliens "of any statutory or constitutional right." Mezei, 345 U.S. at 212. Congress so authorized in 8 U.S.C. § 1225(b). Of course, the power to detain arriving aliens is not "limitless in all respects." Castro v. U.S. Dep't of Homeland Sec., 835 F.3d 422, 449 n.32 (3d Cir. 2016), cert. denied, 137 S. Ct. 1581 (2017). While habeas review may be available in exceptional cases, ordinarily, at a minimum, the Constitution accommodates § 1225(b) detention of less than a year and a half.

The Supreme Court pronounced this principle in Mezei, where an alien arrived in New York harbor but was found "excludable," i.e. inadmissible. Mezei, 345 U.S. at 208. Because no other country would admit the alien, he remained in custody on Ellis Island indefinitely. Id.

at 209. The alien filed a habeas petition after he had been in custody for twenty-one months, and the Supreme Court upheld the detention: "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Id. at 209, 212.

The procedure that Congress authorized in Mezei afforded aliens less process than does the current § 1225(b). Unlike the situation that elicited dissents in Mezei, aliens detained under § 1225(b)(1)(B)(ii) are entitled to a full hearing before an immigration judge to contest removal and seek asylum, and an appeal of any adverse decision to the BIA followed by the opportunity to file a petition for review with the appropriate court of appeals, if necessary. Compare Mezei, 345 U.S. at 217 (Black, J., dissenting) (protesting that the alien was being held indefinitely without a hearing), id. at 220 (Jackson, J., dissenting) (same), and id. at 209 (majority op.) (describing how immigration officials declined to participate in a custody determination hearing), with 8 U.S.C. § 1225(b)(1)(A)(ii) (giving arriving aliens seeking asylum the procedural protections of § 1229(a) removal proceedings) and Diop v. ICE/Homeland Sec., 656 F.3d 221, 223–26 (3d Cir. 2011) (describing some of the process available in ordinary § 1229(a) removal proceedings).

10

Detention under § 1225(b)(1)(B)(ii) has a "definite termination point," Demore, 538 U.S. at 529, because it ends with either a denial of the asylum application and a final order of removal, or a grant of the asylum application and the termination of proceedings with an order of release. During the pendency of those proceedings, ICE may also consider, in its discretion, whether to parole the alien out of custody. 8 U.S.C. § 1182(d)(5)(A). If the detention scheme in Mezei was constitutional, it follows that § 1225(b)(1)(B)(ii)'s detention scheme—which gives more process and has a built-in, definite termination point—is also constitutional.

Accordingly, the Third Circuit has rightfully expressed doubt as to the viability of a constitutional challenge to § 1225(b). In Tineo v. Ashcroft, 350 F.3d 382, 399 (3d Cir. 2003), an arriving alien contested his detention under § 1225(b). Tineo, 350 F.3d at 387. The court cited Demore's holding that mandatory detention under a related subsection without a bail hearing during removal proceedings "is a constitutionally permissible part of the removal process." Id. at 399 n.12 (internal quotations omitted). While Tineo declined to address the alien's challenge to his § 1225(b) detention, it noted, "[Demore] casts substantial

11

doubt on the viability of a due process challenge to the statute under which Tineo was detained." Id.

Mezei endows the executive branch with broad authority to detain, for at least a year and a half, if necessary, inadmissible arriving aliens pending their removal or grant of asylum. Because Shire is an inadmissible arriving alien, see 8 U.S.C. § 1182(a)(7)(A)(i)(I), and has been detained for barely 1 year, Respondents may constitutionally detain him without a bond hearing pending his removal. See Mezei, 345 U.S. at 212. Because no due process violation has occurred, the court should deny the habeas petition.

### b. Case law concerning the detention of aliens found within the country does not apply.

Shire urges the court to apply case law interpreting § 1226(c) — a section which applies only to non-arriving aliens who have committed certain crimes or acts of terrorism. See 8 U.S.C. § 1226(c)(1). Cases relying on § 1226(c) do not apply to arriving aliens.

Congress has created a detailed statutory scheme that provides varying degrees of process depending upon the alien's particular status, the alien's ties to the United States, and the country's interests in controlling its borders. Newly arriving aliens and aliens illegally present

for less than two years who are inadmissible due to fraud, misrepresentation, or lacking sufficient documentation, receive the least process and are subject to expedited removal. See 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II). Aliens generally must be detained pending their removal proceedings. Id. § 1225(b)(1)(B)(ii). An alien who has already lawfully entered the country, as discussed above, is entitled to greater due process. See Zadvydas, 533 U.S. at 693. Because of the differences in constitutional entitlement between § 1225 arriving aliens and § 1226 entered aliens, § 1226 cases are inapt to § 1225 detention challenges. Accord Gregorio-Chacon v. Lynch, No. 16-2768 (SDW), 2016 WL 6208264, at *4 (D.N.J. Oct. 24, 2016) ("It thus appears that detention of nearly a year would certainly be more reasonable under § 1225(b)(2)(A) than that which is reasonable under § 1226(c), given the lesser level of Due Process to which aliens subject to the entry fiction are entitled." (quoting Damus v. Tsourakis, No. 16-933 (JLL), 2016 WL 4203816, at *4 (D.N.J. Aug. 8, 2016))).[3]

---

[3] The Ninth Circuit has held otherwise, but the Supreme Court has granted certiorari to review that decision. Rodriguez v. Robbins, 804 F.3d 1060, 1083–84 (9th Cir. 2015), cert. granted sub nom., Jennings v. Rodriguez, No. 15-1204 (re-argument set for Oct. 3, 2017). For the reasons explained in the Government's Supreme Court merits brief, the

---

Ninth Circuit decision was wrongly decided, not least because it contravenes Mezei. See also Ngo v. I.N.S., 192 F.3d 390, 396 (3d Cir. 1999) ("Mezei . . . has remained a governing precedent . . . ."); see also, e.g., Ahad v. Lowe, No. 16-cv-1864, 2017 WL 66829 (M.D. Pa. Jan. 6, 2017) (extending the § 1226(c) analysis to a § 1225(b) case, without citing Mezei), appeal filed, No. 17-1492 (3d Cir. Apr. 24, 2017) (staying the appeal pending the Supreme Court's decision in Rodriguez). See also Patel v. Doll, et al., Civ. No. 4:17-cv-1783, (M.D. Pa Nov. 15, 2017) (Rep. & Recom.) (Carlson, M.J.), Patel v. Doll, et al., Civ. No. 4:17-cv-1784, (M.D. Pa Nov. 15, 2017) (Rep. & Recom.) (Carlson, M.J.), Patel v. Doll, et al., Civ. No. 4:17-cv-1785, (M.D. Pa. Nov. 15, 2017) (Rep. & Recom.) (Carlson, M.J.), and Patel v. Doll, et al., Civ. No. 4:17-cv-1786 (M.D. Pa. Nov. 15, 2017) (Rep. & Recom.) (Carlson, M.J.) (recommending bond hearing where twelve (12) months detention for an arriving alien detained under § 1225(b) is presumptively unreasonable necessitating an individualized bond hearing before an immigration judge); Martinez-Paredes v. Lowe, Civ. No.1:17-cv-0353, (M.D. Pa Oct. 30. 2017) (holding twenty-two (22) months detention for an arriving alien detained under § 1225(b) is presumptively unreasonable necessitating n individualized bond hearing before an immigration judge); Swarray v. Lowe, Civ. No. 1:17-CV-0970, 2017 WL 3581710 (M.D. Pa. Aug. 18, 2017) (holding that "due process protection for a § 1225(b)(2)(A) detainee is subject to consideration of reasonableness of the length of detention of that alien"); Singh v. Lowe, Civ. No. 3:17-CV-119, 2017 WL 1134413 (M.D. Pa. March 7, 2017) (finding that arriving aliens detained "pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable" and further finding that a sixteen (16) month duration reached the presumptively unreasonable length), appeal docketed, No. 17-2178, 2017 WL 1134413 (3d Cir. May 26, 2017); Ahmed v. Lowe, Civ. No. 3:16-CV-2082, 2017 WL 2374078 (M.D. Pa. May 31, 2017) (finding that petitioner who is an "arriving alien" detained pursuant to § 1225(b), has a due process right to an individualized bond hearing, and his detention for nearly twenty-seven (27) months was presumptively unreasonable), appeal docketed, No. 17-2653, 2017 WL 2374078 (3d Cir. Aug. 3, 2017).

## IV. Conclusion

Shire is lawfully detained under 8 U.S.C. § 1225(b)(1)(B)(ii) and the Fifth Amendment's Due Process Clause. The court should deny Shire's request for an order that he receive a bond hearing and deny his habeas petition.

        Respectfully submitted,

        BRUCE D. BRANDLER
        United States Attorney

        <u>s/ Melissa Swauger</u>
        Melissa Swauger
        Assistant United States Attorney
        PA 82382
        Donald Paul Osborne
        Paralegal Specialist
        228 Walnut Street
        Harrisburg, PA 17101
        Phone: (717) 221-4482
        Fax: (717) 221-2246
        Melissa.swauger@usdoj.gov

Date: November 16, 2017

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SANBUR AGOLE SHIRE,** | : | NO. 1:CV-17-1984 |
| Petitioner | : | |
| | : | |
| v. | : | (Rambo, J.) |
| | : | |
| **THOMAS R. DECKER, et al.,** | : | |
| Respondents | : | |

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on November 16, 2017, she served a copy of the attached

## RESPONSE TO PETITION FOR HABEAS CORPUS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Sanbur Agole Shire
A 208-676-080
York County Prison
3400 Concord Road
York, PA 17401

s/ Donald P. Osborne
Donald P. Osborne
Paralegal Specialist